**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**LORELEI RAY TITUS**                                        **CIVIL ACTION**

**VERSUS**                                                         **NO.: 19-00335**

**ANDREW SAUL, COMMISSIONER OF THE**          **SECTION: "E"(4)**
**SOCIAL SECURITY ADMINISTRATION**

<u>**REPORT AND RECOMMENDATION**</u>

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Lorelei Ray Titus ("Titus")'s claim for Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**I.    <u>Factual Summary</u>**

Titus is a fifty-four (54) year old female who last worked as a as a bookkeeper for her husband's construction company. Rec. doc. 11-2, Tr. 15. At the date of the alleged onset, Titus was forty-nine (49), which is defined as a younger individual. *Id.* She complains that his disability began on October 7, 2015. Rec. doc. 1. She contends that she is disabled from obsessive compulsive disorder ("OCD"), major depression disorder, ("MDD"), and generalized anxiety disorder ("GAD"). *Id.* Specifically, Titus contends her OCD causes her to count and check numerous items in her home, which takes a considerable amount of time and causes depression and anxiety. Rec. doc. 11-6, Tr. 198.

Titus was last insured on December 31, 2019. Rec. doc. 11-6, Tr. 217. On October 13, 2015, Titus filed a Title II application for a period of disability and for disability insurance

benefits. Rec. doc. 11-2, Tr. 10. The claim was initially denied on February 12, 2016. *Id.* Titus, thereafter, submitted a request for hearing on February 29, 2016, before Administrative Law Judge ("ALJ") Jeffery D. Morgan. *Id.* The hearing took place on September 29, 2017, and, on December 20, 2017, the ALJ found that Titus was not disabled from October 17, 2015 through the date of the decision. Rec. doc. 1-2, Tr. 21.

In reaching the decision, the ALJ found that Titus met the insured status requirements through December 31, 2020. Rec. doc. 11-2. Tr. 12 ("Finding 1"). The ALJ also found that Titus had not engaged in substantial gainful activity since October 7, 2015, the alleged onset date. *Id.* ("Finding 2"). The ALJ further found that Titus suffers from OCD, post-traumatic stress disorder, MDD, and GAD. *Id.* (Finding 3"). The ALJ found that Titus does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Rec. doc. 11-2, Tr. 13 ("Finding 4"). The ALJ further found that Titus has the residual functional capacity to perform the full range of work at all exertional levels except that she could only perform simple, routine tasks and may only simple work-related decisions primarily involving things rather than people. *Id.* ("Finding 5"). The ALJ also determined that Titus must avoid high stress work, defined as production-rate or quota-based work, as she can only and occasionally adapt to changes in the workplace routine or setting. Rec. doc. 11-2, Tr. 14 ("Finding 5").

In Findings 6-8, the ALJ found that Titus was unable to perform her past relevant work, is a younger individual on the alleged disability onset date, has a high school education, and is able to communicate in English. Rec. doc. 11-2, Tr. 19 ("Finding 6-8"). In Finding 9, the ALJ found that the transferability of job skills is not material to a determination of disability because the

Medical-Vocational Rules Framework supported a finding that Titus was "not disabled" even if she had transferable skills. Rec. doc. 11-2, Tr. 20 ("Finding 9"). Finally, the ALJ concluded that, considering Titus's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy she can perform such as an industrial cleaner, a laundry worker, or a housekeeping cleaner. *Id.* ("Finding 10"). The ALJ, therefore, concluded that Titus was not under a disability from October 7, 2015 through the date of the decision. *Id.* ("Finding 11").

After being denied administratively, Titus filed a complaint in this Court challenging the denial of her application for disability benefits. Rec. doc. 1. Titus contends that the ALJ's opinion is not based upon substantial evidence because the ALJ committed reversible legal error at Step Three and Step Five. Rec. doc. 15, p. 4. Titus complains that the ALJ failed to give weight to medical records and numerous medical opinions that are supportive of Titus' claim and also improperly considered the Listings. *Id.* Titus also complains that the ALJ erred when he concluded that she is capable of jobs that involving cleaning. Rec. doc. 15, p. 5. As such, Titus contends that the Commissioner's denial of benefits is not supported by substantial evidence.

The Commissioner contends that his decision was based on substantial evidence where the record is replete with evidence of Titus's ability to continue to engage in daily activities to include assisting with her family's construction company and caretaking for her grandchildren. Rec. doc. 17, p. 1. The Commissioner also contends that substantial evidence supports his finding that Plaintiff can perform other jobs in the national economy where he considered her impairments and limited her to simple, low stress work. *Id.*

II.    **Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

4

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.   The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether is he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## III.    <u>Analysis</u>

### a.  *Step Three Analysis, Listing 12.06.*

Titus contends that she is prejudiced because the ALJ concluded that her mental health did not equal the required listing level. Rec. doc. 15, p. 4. Titus contends that the ALJ's decision was not harmless because her condition was severe enough to meet the Listing requirements. Rec. doc. 15, p. 9. In addition, Titus contends that the ALJ did not properly analyze the medical evidence in the record and instead substituted his lay opinion for the medical opinion of experts. *Id.* Titus contends that the medical records are replete with medical documentation of her OCD. *Id.*

The Commissioner contends that the ALJ properly determined that Titus's impairments

5

alone, or in combination, did not meet the requirements for presumptive disability. Rec. doc. 17, p. 3. The Commissioner further contends that Titus does not dispute the ALJ's determination concerning subsections (B) and (C) of Listing 12.06 both of which are determinative in presumptive disability under Listing 12.06. Rec. doc. 17, p. 6. Consequently, the Commissioner contends that Titus cannot show that the ALJ erred in his step three finding and his decision is based upon substantial evidence. *Id.*

Listing 12.06 encompasses anxiety-related disorders and obsessive-compulsive disorders. 20 CFR § Pt. 404, Subpt. P, App. 1. The required level of severity for Listing 12.06 is met when the requirements of paragraphs A and B of Listing 12.06 are shown or when the requirements of paragraphs A and C of Listing 12.06 are shown. *Id.* Paragraph A of Listing 12.06 requires at least three of six characterizations for anxiety disorders;[1] a panic disorder through a showing of panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences or disproportionate fear or anxiety about at least two different situations; or obsessive-compulsive disorder, characterized be shown through involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or repetitive behaviors aimed at reducing anxiety. *Id.* Paragraph B of Listing 12.06 requires the claimant show an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* Paragraph of Listing 12.06 requires the impairment be "serious and persistent" and the claimant have a medically documented history of the existence of the disorder over a period of at least 2 years with evidence of both "medical treatment, mental health therapy,

---

[1] An anxiety disorder is characterized by three or more of the following: restlessness, easily fatigued, difficulty concentrating, irritability, muscle tension, or a sleep disturbance.

psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [claimant's] mental disorder;: and marginal adjustment—"[claimant] ha[s] minimal capacity to adapt to changes in [claimant's] environment or to demands that are not already part of [claimant's] daily life." *Id.*

The ALJ found that Titus's condition does not meet Listing 12.06 anxiety and obsessive-compulsive disorders. Rec. doc. 11-2, Tr. 13. In making this finding, the ALJ noted that he considered whether the "paragraph B" criteria were satisfied. *Id.* The ALJ noted that the medical evidence showed a history of treatment for mental conditions diagnosed with major depression, anxiety disorder, PTSD, and obsessive-compulsive disorder. Rec. doc. 11-2, Tr. 14. He noted Titus's testimony that she is obsessed with cleanliness of both her house and person. *Id.* He noted that her OCD compels her to perform certain rituals repeatedly and she proceeded to provide examples of those rituals. *Id.*

The ALJ also noted her daily activities of driving herself to church, the grocery store, and picking up her granddaughter for visits. Rec. doc. 11-2, Tr. 15. The ALJ also noted that in March 2017 Titus and her husband took a cruise to Cozumel, Mexico, which she considered a "good" trip. *Id.* The ALJ further noted that Titus participated in individual therapy counseling through the Obsessive Compulsive Disorder Institute of New Orleans focusing on dealing with anxiety, emotions, and appropriate responses to rituals and impulses relating to her OCD. *Id.*

The ALJ continued his exhaustive analysis of her medical records and noted while mood abnormalities were noted on some exams, that Titus's treatment notes overwhelmingly document the absence of extreme symptoms: normal motor function, normal speech, logical judgment, appropriate insight, normal thought process and no delusions. Rec. doc. 11-2, Tr. 18. The ALJ found that the extreme limitations reported by Titus and her physician were not supported

because, while she had OCD, she engaged in a number of activities that are inconsistent with a condition, or combination of conditions of disabling severity. Rec. doc.11-2, Tr. 19.

While Titus complains that the ALJ made no mention of paragraph A, as pointed out by Titus, he does identify the medical conditions of anxiety disorder and obsessive compulsive disorders. Consequently, he considered the medical information and the mental disorders. The ALJ did not dispute the existence of the medical conditions. Consequently, the failure to reference Paragraph A is a distinction without a difference because he does identify the condition—generalized anxiety disorder—that characterizes Paragraph A. Further, unlike the court in *Audler v. Astrue*, 501 F. 3rd 446, 448-49 (5th Cir. 2007), the ALJ in this case conducted an extensive analysis of the advice of record. Therefore, failure to identify Paragraph A by label, while referencing the substance of it, does not render the decision not based on substantial evidence.

### b. *Evaluation of Medical Evidence*

Next Titus contends that the ALJ improperly substituted his opinion for the opinion of the medical experts. Rec. doc. 15, p. 13-15. Titus contends that the ALJ failed to evaluate her treating specialist's opinion under SSR 96-2p, which entitles the evaluation to deference and is weighed using the factors set forth in 20 C.F.R. 404.1527 and 416.927. *Id.* Titus complains that the ALJ cherry-picked the treatment notes to validate two non-treating physician's opinions that were given significant weight. Rec. doc. 15, p. 16. Titus contends that, where all of her specialists agree that her symptoms are expected to interfere with her ability to work and impact her ADLs, the ALJ committed error by rejecting their opinion without contradictory evidence from a medical expert. Rec. doc. 15, p. 17.

The Commissioner contends that the ALJ properly weighted the opinion of Titus' doctors. Rec. doc. 17, p. 6-7. The Commissioner also notes that Dr. Chabaud's medical opinion is

consistent with the ALJ's step four determination, but that any statement by the doctor as to the ultimate finding of disability is properly disregarded as the regulations reserve such determination to the ALJ. *Id.* The Commissioner also contends that the ALJ properly gave partial weight to the check-the box opinions of Dr. Chabaud and Dr. Fitch's opinion. Rec. doc. 17, p. 7. The Commissioner, therefore, contends that because ALJ properly executed his duties and Titus failed to show that she met the demanding requirements of Listing 12.06, that the ALJ's opinion is based upon substantial evidence. *Id.*

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel,* 209 F.3d 448 (5th Cir. 2000) (emphasis in the original). "[I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.*

 The record shows that both Dr. Chabaud and the ALJ concluded that Titus was not able to perform her past work as a bookkeeper. *See* Rec. doc. 11-2, Tr. 17-19. Titus's main complaint is that she also could not work at all due to the OCD and objective medical evidence. Yet, the extensive analysis of the medicals, including the reports of her treating doctors, shows contradictions between the treating doctor's conclusion–that Titus is disabled—with Titus's ongoing activities of daily living.

The ALJ properly considered the treatment notes of Dr. Fitch regarding her mood and OCD symptoms, noting that they fluctuated over time. *See* Rec. doc. 11-2, Tr. 18. This finding is

consistent with Dr. Fitch's and Dr. Chabaud's report, which indicated fluctuation in the severity of her condition throughout the course of her treatment. Rec. doc. 11-7, Tr. 312-13. The ALJ also noted that her OCD condition, which exacerbated her depression and anxiety symptoms, had improved per her report. *See* Rec. doc. 11-2, Tr. 18; *see also* Rec. doc. 11-7, Tr. 357-59.

The ALJ considered the report of Dr. Chabaud as well as the treatment records which were written two weeks before the report, as well as the treatment records after the issuance of the report. The ALJ properly noted that while the report indicated extreme limitations or significant impairment to her ability to engage in activities of daily living including work, the actual treatment records noted  improvement. For example, she reported to Dr. Burwell and Dr. Townsend on March 23, 2016, the same month Dr. Fitch's and Dr. Chabaud's report was issued noting suicidal ideations, that her mood had improved, and she was not as depressed. *See* Rec. doc. 11-7, Tr. 367-69; 312-17. The record also shows the same month the report was issued, Titus actually reported overall improvement, with the doctor's noting her brighter smiling appearance, less anxiety, and that she was sleeping well, had a good appetite, good concentration and good interaction with her family, and that she was able to "fight the urge" in regard to her OCD symptoms. *Id.*

Nowhere in the ALJ's opinion did he conclude that Titus had no limitations. Rather, the ALJ but he properly considered the entirety of the treatment records and found that while her medically determinable impairments could reasonably cause her symptoms, her statements as to their intensity and persistence were simply not consistent with the medical evidence. *See* Rec. doc. 11-2, Tr. 18. While Titus contends that the ALJ ignored her treating doctors, there is no evidence that implies this suggestion is correct.

Additionally, Titus is misplaced when she contends that the ALJ did not consider the

extensive Psychological Evaluation and Treatment Summary.[2] In fact, the summary is specifically referenced in Finding 5 of the ALJ's opinion. Rec. doc. 11-2, Tr. 17. Additionally, the determination opined by Dr. Chabaud that Titus is disabled is not a medical opinion but instead a legal opinion left to the ALJ.

Having determined that the ALJ properly considered the medical evidence, but reached a different result based upon that review, the Court finds that the ALJ's finding regarding the medical evidence is based upon substantial evidence.

### c. *Step 5 Finding*

Titus next contends that the ALJ's decision is not supported by substantial evidence because the findings prejudiced her residual functional capacity analysis. Rec. doc. 15, p. 18. Titus also contends that the ALJ erroneously relied on the Vocational Expert's testimony, which conflicted with the medical evidence, the regulations, and settled law concerning ADA accommodations and the SSA. *Id.*

The Commissioner contends that substantial evidence supports the ALJ's step five finding. Rec. doc. 17, p. 8. The Commissioner also contends that Titus failed to prove that she was unable to perform the alternative work such as an industrial cleaner, laundry worker and housekeeping cleaner. *Id.* (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).  As a result, the Commissioner contends that the ALJ's decision is based upon substantial evidence. *Id.*

The ALJ held that Titus' ability to perform work at all exertional levels has been compromised by non-exertional limitations.  Rec. doc. 11-2, Tr. 20. He relied upon a vocational expert to determine the extent to which these limitations erode the occupational base of work at

---

[2] The Court notes here that there is a duplicate copy of the same evaluation later in the records. *See* Rec. doc. 11-7, Tr. 401-407.

all exertional levels. *Id.* The vocational expert testified, given Titus's age, education, work experience and residual functional capacity, that Titus could work as an industrial cleaner, laundry worker, and housekeeper cleaner. *Id.* As a result of the vocational expert's testimony the Court found Titus was not disabled under the framework of section 204.00 in the Medical-Vocational Guidelines. *Id.*

While Titus contends that the ALJ made cumulative errors and that those decisions impacted her RFC, the Court has previously found that there were no errors in the RFC assessment.

Titus complains that the ALJ's RFC did not properly factor in what Titus believed were her logical limitations that would accompany her routines, rituals, and severe mental conditions. Rec. doc. 15, p. 19-20. The ALJ properly found that Titus statement of her limitations exceeded her functional limitations. For example, the evidence notes that Titus was able to engage in varying daily activities, i.e., working as a bookkeeper and taking care of grandchildren on occasion, and going on a cruise in 2017, which all supports the ALJ's finding that she can perform her jobs in the national economy.

Additionally, the residual functional capacity assessment performed by Dr. Joseph Kahler, also indicated Titus was only "moderately limited" in her ability to maintain concentration on tasks for extended periods of time and with a regular schedule. Rec. doc. 11-3, Tr. 61-62. This finding is consistent with the ALJ's assessment that she can perform simple, routine tasks, make only simple work-related decisions and avoid high stress work. Rec. doc. 11-2, Tr. 13-14.

Finally, Titus suggests that a vocational expert cannot testify about availability of jobs for a claimant based upon the assumption that the employer will make an accommodation for the claimant's disability. Rec. doc.15, p. 21 (citing *Cleveland v. Policy Management Systems Corp*,

526 U.S. 795 (1999) and *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999)). However, the opinions cited by Titus does not stand for that proposition.

In fact, the Supreme Court in *Cleveland* considered whether a grant of SSDI conflicts or prohibits for proving an essential element of her ADA claim that she "could perform the essential functions of her job" if reasonably accommodated. Moreover, while *Jones*, 174 F.3d at 693, does provide that a vocational expert should not base his or her determination on the availability of jobs under the assumption that the ADA requires and employer to accommodate an individual's disability, unlike the vocational expert in *Jones,* the vocational expert in this case did not mention the ADA in his answer. Any limitations the vocational expert considered were in response to questions specifically addressed to him. In fact, the only evidence in the record regarding the jobs that Titus could perform were based on broad vocational patterns rather than on any individual employer practices.

Furthermore, there is no evidence that any of jobs that the vocational expert found that Titus would be able to perform even posed any sort of a production-rate or quota, especially as no such language is mentioned in neither the testimony nor the ALJ's opinion. *See* Rec. doc. 11-2, Tr. 20, 26-52. The Court, therefore, finds that the ALJ properly relied on the vocational expert's testimony and his opinion is based upon substantial evidence.

## IV.    <u>Recommendation</u>

It is the **RECOMMENDED** that the ALJ's decision denying Lorelei Ray Titus's claim for Disability Insurance Benefits and Title II Disability Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this <u>1st</u> day of April 2020

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.